# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

DAWN RACHEL SHEARER,

        Petitioner,    :    Case No. 1:19-cv-715

  - vs -        District Judge Matthew W. McFarland
                      Magistrate Judge Michael R. Merz

WARDEN,
  Dayton Correctional Institution,

                             :
        Respondent.

## REPORT AND RECOMMENDATIONS

       This is an action on a Petition for writ of habeas corpus brought *pro se* by Petitioner Dawn Rachel Shearer under 28 U.S.C. § 2254. The case is before the Court for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 9), and the Return of Writ (ECF No. 10).

       When ordering the State to file an answer in this case, Magistrate Judge Stephanie Bowman, to whom the case was at that time referred[1], set a deadline for Petitioner's reply of twenty-one days after the Return of Writ was filed (Order for Answer, ECF No. 6, PageID 57). Since the Return was filed December 20, 2019, and served on Petitioner by mail, her reply was due January 13, 2020[2]. Shearer did not file a reply within the time allowed and has not tendered a reply since then.

---

[1] The Magistrate Judge reference has recently been transferred to the undersigned to help balance the Magistrate Judge workload in the Southern District.
[2] Under Fed.R.Civ.P. 6, a party has an extra three days to respond to another party's filing when he or she is served by mail.

**Litigation History**

On April 5, 2017, the Butler County Grand Jury indicted Shearer on two counts of murder in violation of Ohio Revised Code § 2903.02(B) and two counts of felonious assault in violation of Ohio Revised Code § 2903.11(A)(1) and (2), each with a firearm specification.

The case was tried to a jury which found Shearer guilty as charged. After merging some counts under Ohio Revised Code § 2941.25, the trial judge sentenced Shearer to fifteen years to life on the murder count and a consecutive mandatory three years on the firearm specification. Shearer appealed and the Twelfth District affirmed. *State v. Shearer,* 2018-Ohio-1688 (Ohio App. 12th Dist. Apr. 30, 2018), appellate jurisdiction declined, *State v. Shearer*, 2018-Ohio-3450 (Aug. 29, 2018). While Shearer filed a number of post-conviction motions in the trial court, she apparently never filed a petition for post-conviction relief under Ohio Revised Code § 2953.21.

Shearer's pleads the following grounds for relief:

> **GROUND ONE** Appellant's speedy trial rights were violated when she was coerced into waiving her speedy trial rights.
>
> **GROUND TWO**: Statements made by the prosecution in closing constituted prosecutorial misconduct and as a result appellant was prejudicially affected.
>
> **GROUND THREE**: The court erred in ordering appellant to be interviewed by the state's expert.
>
> **GROUND FOUR**: The court erred by not allowing appellant's expert witness to testify that appellant suffered from battered-woman's syndrome.
>
> **GROUND FIVE:** This case presents a significant constitutional issue surrounding the right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

(Petition, ECF No. 1, PageID 6-23.)

# Analysis

**Grounds One and Five:  Denial of a Right to a Speedy Trial**

In her First and Fifth Grounds for Relief, Shearer claims she was unlawfully deprived of a speedy trial.  Respondent defends these two Grounds for Relief on the merits and asserts the Twelfth District's decision on this question is neither contrary to nor an unreasonable application of Supreme Court precedent.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Shearer's first assignment of error on direct appeal was that her right to a speedy trial had been denied.  The Twelfth District decided that claim as follows:

> [*P56]  In her first assignment of error, Shearer argues her conviction must be reversed and the charges against her dismissed since she was "coerced" into waiving her speedy trial rights. We disagree.
>
> [*P57]  The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, Section 10, Ohio Constitution. *State v. Taylor*, 98 Ohio St. 3d 27, 2002-Ohio-7017, ¶ 32, 781 N.E.2d 72. To preserve this right, the Ohio General Assembly enacted this state's speedy trial statutes

found in R.C. 2945.71 through 2945.73. *State v. Miller*, 12th Dist. Warren No. CA2009-01-008, 2009-Ohio-4831, ¶ 8. As relevant here, R.C. 2945.71(C)(2) provides that a person against whom a charge of felony is pending "[s]hall be brought to trial within two hundred seventy days after the person's arrest." However, pursuant to 2945.71(E), "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." Compliance with these statutes is mandatory and the statutes "must be strictly construed against the state." *Id.*, citing *State v. Cox*, 12th Dist. Clermont No. CA2008-03-028, 2009-Ohio-928, ¶ 12.

[*P58] An appellate court's standard of review regarding speedy-trial issues involves a mixed question of law and fact. *State v. Messer*, 12th Dist. Clermont No. CA2006-10-084, 2007-Ohio-5899, ¶ 7. In conducting such a review, "the appellate court defers to the trial court's findings of fact as long as the findings are supported by competent, credible evidence, but the appellate court independently reviews whether the trial court properly applied the law to those facts." *State v. Gellenbeck*, 12th Dist. Fayette No. CA2008-08-030, 2009-Ohio-1731, ¶ 8, citing *State v. Riley*, 162 Ohio App. 3d 730, 2005-Ohio-4337, ¶ 19, 834 N.E.2d 887 (12th Dist.).

[*P59] As noted above, Shearer claims her conviction must be reversed and the charges against her dismissed since she was "coerced" into waiving her speedy trial rights. The record in this case contains no such waiver. Rather, when faced with the potential of having her experts' testimony excluded from trial as a consequence of her violating the timing requirements found in Crim.R. 16(K), Shearer, on advice of her trial counsel, moved for a continuance. While Shearer believes such a decision was coerced, we find Shearer's decision to move for a continuance was entered knowingly, intelligently, and voluntarily on the advice of counsel in order to provide her with the best chance of defending against the serious nature of the charges levied against her. Shearer's claim otherwise lacks merit.

[*P60] In so holding, we specifically reject Shearer's claim that the "timing of the indictment and the subsequent motions in limine seem to be suspect," thereafter referring to the prosecutor's actions in challenging her experts' testimony under Crim.R. 16(K) as "disingenuous at best." The record indicates this case was bound over to the Butler County Grand Jury on March 3, 2017, the matter thus falling under the trial court's jurisdiction from that date forward. Shearer, however, seemingly resting on her laurels, did nothing to procure her experts' testimony until after she was indicted over a month later on April 5, 2017. While this case may have diverged

4

> somewhat from the status quo, as the trial court stated, "while there was not an indictment filed, this court did have jurisdiction over the matter," during which "[it] will routinely hear motions prior to indictments, such as motions for modification of bond or even bills of information, on cases that are assigned to this court prior to indictment." No such motions were filed in this case. Therefore, while we certainly understand and appreciate advocating one's position, particularly in a case of such magnitude, Shearer's accusations against the prosecutor in this case are unbecoming and unnecessary. Accordingly, finding no violation of Shearer's speedy trial rights necessitating her conviction be reversed and the charges against her dismissed, Shearer's first assignment of error lacks merit and is overruled.

*State v. Shearer,* 2018-Ohio-1688.

Both the Ohio and federal Constitutions contain guarantees of a speedy trial. To enforce that right, the Ohio General Assembly enacted Ohio Revised Code § 2945.71 which sets very rigid deadlines for trial; when a statutory speedy trial deadline is missed, the charges must be dismissed.

However, a federal habeas corpus court can only consider whether a state conviction is unlawful on the basis of whether it violates the United States Constitution. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). That is, we have no authority to enforce in habeas corpus either the Ohio statutory speedy trial right or the Ohio constitutional right, only the federal constitutional guarantee.

The Supreme Court has developed a flexible four-part balancing test to use in determining whether a defendant's federal constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant has asserted his right; and (4) prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530-32 (1972). Delay is presumptively prejudicial only where the post-accusation delay approaches one year. *Doggett v. United States*, 505 U.S. 647 (1992). Shearer was arrested immediately after the shooting on February 6, 2017, and tried June 19-23, 2017, just over four months since the shooting and far less than the year

required for even a presumption of prejudice under the United States Constitution. Shearer also has not attempted to show any prejudice.

As the Magistrate Judge reads the Petition, Shearer's underlying claim is that she was forced to waive[3] her speedy trial right in order to be able to introduce evidence from her expert witness. As she puts it, the prosecutor put her between a "rock and a hard place." Rather, the Court believes the circumstances of her case are what made for a difficult choice. Criminal defendants often face hard choices, for example, whether to go to trial and take a chance on winning or accept a plea bargain with an agreed sentence. This case obviously was not a simple one. The only surviving eyewitness and the only plausible offender were the same person. To obtain a favorable verdict, Shearer had to convince the jury that her shooting of her ex-husband was either excusable or justifiable. She and her attorney reasonably concluded that her narrative would require expert support. However, it is undisputed that they did not provide the expert's report at the time before trial when the Ohio Rules of Criminal Procedure require that it be provided. Had she insisted on the earlier trial date, the State would have been within its rights to insist on exclusion of the expert. Again quite reasonably she and her attorney decided that continuing the trial was a better choice than exclusion of the expert.

There is no law of nature which provides that all the evidence needed to defend a serious criminal charge can be gathered within the time allowed by the speedy trial statute. The fact that the choice involved was a hard one does not mean it was unconstitutionally forced on Petitioner.

Petitioner's speedy trial claims are without merit.

---

[3] The court of appeals is correct: there was no general waiver of the speedy trial right. By moving for a continuance, Shearer waived her right to complain of the lack of a speedy trial for the length of the continuance, but not as a general matter. Once the continuance expired, the speedy trial clock was again in play.

6

**Ground Two:  Prosecutorial Misconduct**

In her Second Ground for Relief, Petitioner claims that the prosecutor's comments during closing argument were improper and prejudiced her case.  Respondent argues this claim is procedurally defaulted because Shearer's attorney made no contemporaneous objection and she did not appeal this issue to the Supreme Court of Ohio.  In the alternative, Respondent asserts the Twelfth District's decision on the merits of this claim is entitled to deference under 28 U.S.C. § 2254(d)(1).  As noted above, Shearer has made no reply to these defenses.

Shearer presented her prosecutorial misconduct claim to the Twelfth District as her second assignment of error on direct appeal.  That court decided the claim as follows:

> [*P67]  In her second assignment of error, Shearer argues her conviction must be reversed due to the prosecutor's alleged misconduct during the state's rebuttal closing argument. We disagree.
>
> [*P68] For her conviction to be reversed based on prosecutorial misconduct, Shearer must prove the prosecutor's comments during the state's closing argument were improper and that those comments prejudicially affected her substantial rights. *State v. Elmore*, 111 Ohio St. 3d 515, 2006-Ohio-6207, ¶ 62, 857 N.E.2d 547. In making such a determination, the focus is upon the fairness of the trial, not upon the culpability of the prosecutor. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. A finding of prosecutorial misconduct will not be grounds for reversal unless the defendant can demonstrate that she has been denied a fair trial because of the prosecutor's prejudicial remarks. *State v. Smith*, 12th Dist. Warren No. CA2017-02-013, 2017-Ohio-7540, ¶ 29.
>
> [*P69]  It is undisputed that Shearer's trial counsel did not object to the prosecutor's comments made during the state's rebuttal closing argument now at issue, thereby waiving all but plain error. *State v. Warwick*, 12th Dist. Preble No. CA2017-01-001, 2018-Ohio-139, ¶ 30. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not exist unless the error is obvious and, but for the error, the outcome of the trial would have

7

been different. *State v. Yanez*, 12th Dist. Butler No. CA2016-10-190, 2017-Ohio-7209, ¶ 23. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 12. Prosecutorial misconduct may rise to the level of plain error only if it is clear from the record that the defendant would not have been convicted in the absence of the improper comments. *State v. Isreal*, 12th Dist. Butler No. CA2010-07-170, 2011-Ohio-1474, ¶ 43.

[*P70] Shearer claims the prosecutor engaged in misconduct during the state's rebuttal closing argument by impermissibly denigrating the role of her trial counsel. Specifically, Shearer takes issue with the prosecutor stating the following during the state's rebuttal closing argument:

> In fact, [Shearer's trial counsel] wanted to be a witness so bad in this case he was sending letters to witnesses trying to contact them. But what he doesn't tell you is the second half of that sentence which is contact me, but I'm not going to tell you why. Get in touch with me, but I'm not going to give you any indication as to why I want you to do so. Collect this door, but I can't tell you why. That's the other half.

[*P71] Shearer claims this "personal attack" on her trial counsel was an attempt by the prosecutor to "criticize [her trial counsel's] arguments, tactics, and his person," which had the potential to "dangerously taint" the jury's view of her trial counsel and of her entire defense strategy.

[*P72] Shearer, however, in challenging the prosecutor's statement set forth above, conveniently ignores the prosecutor's statements made immediately preceding, wherein the prosecutor stated:

> You know, it's interesting, when we started back on Monday, one of the things we talked about [is] the fact that the Court and everybody has a different role. The jury is the judges or the decider of the facts. The Judge tells you what the law is. And I thought, it's always been my understanding, that the attorneys are simply here to present to you what the evidence is, not to double as witnesses, not to substitute in as experts, not to interject themselves into the proceedings. Because everything I just heard [during Shearer's trial counsel's closing argument] was far different than the actual testimony that came out during this trial.

8

[*P73]  After a thorough review of the record, and when taking the prosecutor's comments in conjunction with the trial court proceedings as a whole, we can find no instances of prosecutorial misconduct in these challenged statements, nor in any other statements made by the prosecutor during the state's closing argument. Rather, just as the state aptly notes as part of its appellate brief, the prosecutor's comments "were properly responsive to the issue that counsel had argued at length;" namely, that the investigating officers assumed Shearer's guilt from the outset, thus ignoring potential exculpatory evidence even when questioned about that evidence by her trial counsel in the time leading up to trial. While the record is replete with examples exhibiting this defense strategy, we need look no further than Shearer's trial counsel's own closing argument, during which he began by stating, in pertinent part, the following:

> This case is about a search for the truth. * * * This is about a search for the truth. State of Ohio has a burden to prove, and this, what the lead detective told you. "You didn't care to call me back on the investigation, did you?" And I'm paraphrasing, but her answer was not paraphrased. "It's not that I didn't care, I just didn't do it." The State of Ohio has the burden to prove. This is a search for truth. It is not a search for — well, we've got to stop this and move on, it's (indiscernible). It is a search for the truth and this is the lead detectives final answer on cross-examination. "It's not that I didn't care, I just didn't do it." They have the burden, not the Defense. They have the burden.

Continuing, Shearer's trial counsel then stated:

> Why didn't you follow up on the investigation? Why didn't you call me back? They're asking you to find [Shearer] guilty of murder. Very serious case and they don't even care about calling [or returning our] phone call; it's because they want you to carry the water. Thank goodness for juries because your job is to look at everything and determine, to be fair, what's reasonable, what's not reasonable, what's truth, what's not truth, and search for the truth. And ultimately at the end of the day, that's what a just verdict is, searching for the truth, not searching for accountability, and definitely not just not doing it.

Shearer's trial counsel later reiterated this same point when he stated:

9

> Detectives knew immediately this could have been a self-defense case, immediately. So when they come up here and say, "Well, I didn't return phone calls. I didn't know." I don't know why they didn't return [our] phone calls. It just blows my mind in a murder case. But I digressed.

> [*P74] By repeatedly questioning the investigating officers' tactics, which included interjecting his own credibility, thus implying that there may have been relevant, exculpatory evidence that had been ignored by the police, the prosecutor would have been remiss had he not refuted such allegations, even if such comments referenced Shearer's trial counsel's actions leading up to trial. The prosecutor's comments, which we note spanned only a portion of a single page of the state's otherwise lengthy rebuttal closing argument, do not amount to prosecutorial misconduct, nor can it be said the prosecutor's comments contributed in any way to the jury's finding of guilt. Simply stated, even if the prosecutor had not made these comments, the record contains ample evidence to support the jury's verdict finding Shearer guilty as charged. Therefore, finding no error, let alone plain error, Shearer's second assignment of error alleging prosecutorial misconduct is without merit and overruled.

*State v. Shearer*, 2018-Ohio-1688.

### Procedural Default

The Warden has asserted Shearer's Second Ground for Relief is procedurally defaulted. The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights

10

claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.

11

> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a relevant procedural rule requiring contemporaneous objection: parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). Shearer violated that rule by making no contemporaneous objection to the prosecutor's remarks. The Twelfth District enforced that rule by only reviewing this claim for plain error under Ohio R. Crim. P. 52(b). An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001). Shearer has offered no excusing cause and prejudice. Her Second

12

Ground is therefore barred by her procedural default in failing to object.

The Second Ground is also defaulted because Shearer did not include it in her appeal to the Supreme Court of Ohio. Federal habeas corpus law requires that state court remedies be exhausted before an issue is presented in habeas. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U.S. 270, 275 (1971).

> "A claim may become procedurally defaulted in two ways." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*. Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id*.

*Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted).

**Merits Review**

The Warden also asserts the Second Ground for Relief is without merit. The opinion of a state court on plain error review is still entitled to AEDPA deference if the federal court reaches the merits despite the procedural default. *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009); *Kittka v. Franks*, 539 Fed. Appx. 668, 672 (6th Cir. 2013); *Bond v. McQuiggan*, 506 Fed. Appx. 493, 498 n. 2 (6th Cir. 2013); *Stojetz v. Ishee*, 2014 U.S. Dist. LEXIS 137501 *231 (S.D. Ohio

Sept. 24, 2014)(Frost, D.J.).

In *Serra v. Michigan Dept of Corrections*, 4 F.3d 1348 (6th Cir. 1993), the court identified factors to be weighed in considering prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.* at 1355-56, *quoting Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)(citation omitted). The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.), *cert. denied*, 522 U.S. 1001 (1997)(citation omitted); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988). Claims of prosecutorial misconduct are reviewed deferentially on habeas review. *Thompkins v. Berghuis,* 547 F.3d 572 (6th Cir. 2008), rev'd on other grounds, 560 U.S. 370 (2010), *citing Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert. denied,* 544 U.S. 921 (2005).

The Twelfth District's decision offers a cogent explanation of why the prosecutor's remarks do not constitute misconduct. As that court pointed out, defense counsel's argument strongly implied that the State had more evidence than it had presented and suggested that evidence would have exonerated his client. The prosecutor's comments were a fair and temperate response. The Twelfth District's decision is not an unreasonable application of relevant Supreme Court case law.

Shearer's Second Ground for Relief is without merit as well as being procedurally defaulted.

14

**Ground Three: Trial Court Error in Ordering Petitioner to be Interviewed by the State's Expert**

In her Third Ground for Relief, Shearer asserts the trial court committed error in requiring her to be interviewed by an expert witness for the State.

Shearer presented this claim as her Third Assignment of Error on direct appeal and the Twelfth District decided it as follows:

> [*P63] In her third assignment of error, Shearer argues the trial court erred by requiring her to be interviewed by the state's expert, Dr. O'Donnell, which, we note, was limited by the trial court to "Battered Person's Syndrome and [Shearer's] thoughts and actions as it relates to the Syndrome." In support of this claim, Shearer argues the trial court's order requiring her to be interviewed by Dr. O'Donnell violated her Fifth Amendment right against self-incrimination. However, not only do we find Shearer likely waived this claim by not raising such a claim before the trial court, see *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 9 ("issues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived"), the Ohio Supreme Court specifically rejected this claim in *Goff*, which held:
>
>> [W]e conclude that when a defendant demonstrates an intention to use expert testimony from a psychiatric examination to establish that battered-woman syndrome caused in her "a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force," i.e., to use testimony on battered-woman syndrome to prove the second element of self-defense, a court may compel the defendant to submit to an examination by another expert without violating the defendant's rights under Section 10, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution.
>
> (Emphasis added.) *Id*., 2010-Ohio-6317 at ¶ 58, quoting *State v. Thomas*, 77 Ohio St. 3d 323, 326, 1997-Ohio-269, 673 N.E.2d 1339 (1997).
>
> This is because, as the Ohio Supreme Court further stated in *Goff*:

15

> By putting her mental state directly at issue and introducing expert testimony based upon her own statements to the expert, the defendant opens the door to a limited examination by the state's expert concerning battered-woman syndrome and its effect on the defendant's behavior. Courts have the inherent authority to preserve fairness in the trial process, and allowing the defendant to present expert testimony on the specific effects of battered-woman syndrome on the defendant while denying the prosecution the ability to introduce such evidence would unfairly handicap the prosecution and prevent the trier of fact from making an informed decision.
>
> *Id.*; see also *Kansas v. Cheever,* 571 U.S. 87, 134 S.Ct. 596, 601, 187 L. Ed. 2d 519 (2013) ("[w]hen a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert who has also examined him").
>
> [*P64] That is exactly what occurred here, through such a rigorous and thorough application of *Goff* to the facts of this case that both the trial court and the state should be commended. Therefore, finding no error in the trial court's decision to adhere to the law of this state as pronounced by the Ohio Supreme Court in *Goff*, Shearer's third assignment of error lacks merit and is overruled.

*State v. Shearer,* 2018-Ohio-1688. Although the Twelfth District held Shearer had "likely waived" this claim by not raising it in the trial court, that court proceeded to decide the issue on the merit without limiting itself to plain error review. The Magistrate Judge concludes Shearer has not procedurally defaulted[4] this claim by failing to object because the Twelfth District did not enforce the contemporaneous objection ruled. However, this claim is defaulted by Shearer's failure to include it in her appeal to the Supreme Court of Ohio.

---

[4] The Twelfth District used waiver language when, the Magistrate Judge believes, forfeiture language and analysis is more appropriate. See *Wood v. Milyard*, 566 U.S. 463 (2012): courts of appeals also have authority to consider timeliness defense *sua sponte,* but only if the defense is forfeited, not if it is waived. N. 4: "We note here the distinction between defenses that are 'waived' and those that are 'forfeited.' A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve. *Kontrick v. Ryan*, 540 U.S. 443, 458, n. 13 (2004); *United States v. Olano,* 507 U.S. 725, 733 (1993). That distinction is key to our decision in [this] case."

16

As to the merits, the Twelfth District applied the Supreme Court's decision in *Kansas v. Cheever*, 571 U.S. 87 (2013). In *Cheever* the Court unanimously reaffirmed its decision in *Buchanan v. Kentucky*, 483 U.S. 402 (1987), that the State may introduce the results of a court-ordered mental examination for the limited purpose of rebutting a mental status defense. *Buchanan* and *Cheever* distinguished the earlier case of *Estelle v. Smith,* 451 U.S. 454 (1981), where the Court held a court-ordered psychiatric examination violated the defendant's Fifth Amendment rights when the defendant neither initiated the examination nor put his mental capacity in dispute at trial.

Shearer's case seems to the Magistrate Judge to completely parallel *Buchanan* and *Cheever*. Shearer was only ordered to submit to examination by the State's expert when she put her mental status in issue by proposing to call her own battered-woman syndrome expert. The Twelfth District's decision is not an unreasonable application of *Buchanan* or *Cheever* and thus is entitled to deference under 28 U.S.C. § 2254(d)(1).

Shearer's Third Ground for Relief should therefore be dismissed.

**Ground Four: Exclusion of Defense Expert's Opinion**

In her Fourth Ground for Relief, Shearer contends the trial court erred by excluding her expert witness's opinion that she suffered from battered-woman syndrome.

The Twelfth District considered this claim as Shearer's Fourth Assignment of Error and decided it as follows:

> [*P77] In her fourth assignment of error, Shearer argues the trial court erred by "not allowing" her expert, Dr. Manges, to specifically testify that she "suffered" from battered-woman's syndrome at trial. However, as a simple review of the record reveals, Shearer's trial

17

> counsel never asked Dr. Manges whether Shearer "suffered" from battered-woman's syndrome at trial, much less proffered Dr. Manges' answer to such a question if it had been asked. Rather, it was Shearer's trial counsel himself who so limited Dr. Manges' testimony.
>
> [*P78] As the record indicates, immediately prior to questioning Dr. Manges, Shearer's trial counsel notified the trial court that whether Shearer suffered from battered-woman's syndrome was "the jury's decision to make" so "he will go through what it is and the essential qualifications that he looks for and things of that nature." As a result, although the trial court may have agreed with this proposition, any error that may have occurred was clearly invited by Shearer's trial counsel. Under the invited error doctrine, which is applied when trial counsel is "actively responsible" for the trial court's alleged error, a party is not entitled to take advantage of an error that he himself invited or induced the trial court to make. *State v. Wesley*, 2015-Ohio-5031, ¶ 26, 52 N.E.3d 279. Such is the case here.
>
> [*P79] Regardless, even if invited error did not apply in this case, as noted by the state, the totality of Dr. Manges' testimony elicited at trial was to the effect that Shearer "suffered" from battered-woman's syndrome. As noted above, although never expressly stating his opinion as to whether Shearer suffered from battered-woman's syndrome, Dr. Manges testified that his testing revealed she was suffering from trauma and emotional distress. In so finding, Dr. Manges testified he came to this result after discussing the alleged incidents of abuse, thus indicating Shearer was an individual whom he believed was suffering from battered-woman's syndrome. Therefore, even if invited error did not apply to this case, based on the facts and circumstances here, we can find no error requiring Shearer's conviction be reversed. Accordingly, finding no error within the trial court proceedings, Shearer's fourth assignment of error is without merit and overruled.

*State v. Shearer,* 2018-Ohio-1688.

The Twelfth District's logic is straightforward: it cannot be trial court error to fail to admit evidence that is never offered. Shearer has not rebutted the Twelfth District's decision that this opinion by Dr. Manges was never offered.

Furthermore, their claim was never presented to the Twelfth District as a constitutional

18

claim at all. Rather, Shearer's argument was that Dr. Manges's opinion that she suffered from battered-woman syndrome was admissible under Ohio Revised Code § 2901.06(A)(1) and (2)(Appellant's Brief, State Court Record, ECF No. 9, PageID 136). There is no hint of a constitutional claim in this portion of Shearer's appellate brief.

Because Shearer failed to present any constitutional claim regarding Dr. Manges's testimony to the state courts and the argument could have been presented on direct appeal, presentation now to the Ohio courts would be barred by *res judicata*. *State v. Perry,* 10 Ohio St. 2d 175 (1967). That doctrine has repeatedly been held by the Sixth Circuit to be an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Shearer's Fourth Ground for Relief, to the extent it purports to state a constitutional claim at all, is procedurally defaulted for failure to fairly present it to the Ohio courts as a constitutional claim.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

be permitted to proceed *in forma pauperis*.

July 13, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.